Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company. This matter is on appeal from a final judgment in the Middle District of Louisiana from the Honorable John DeGravel. The issue presented in this case is whether a plaintiff or the plaintiffs in this case with personal injury claims were covered under a general liability policy issued to a sugarcane farm where they were hand planting sugarcane when they were injured or if their remedy is solely in workers' compensation. Very little background, for your honors, the plaintiffs are Mexican nationals, they're in the United States on H-2A visas for non-immigrant agricultural workers. They're here to replace labor in the United States where there's a lack of labor in the area and the farmer certifies that they don't have an appropriate amount of labor and get the H-2A workers to come in and do the manual labor for them. These particular plaintiffs were recruited to do the work by a labor contractor, Lowry Farms, which is a company located in Arkansas. They traveled directly from Mexico to Donaldsonville, Louisiana and that's where the accident happened. The foreign bureau policies at issue are meant to protect the insured from third parties, harangue sugars, the farmer from third parties, people that are outside of the family of employees, strangers to the enterprise. The policies contain- I know this comes down to this specific language of the Louisiana statutes, but before we dive into that, as a background matter, let me give you a scenario and see if you agree with me. If I hire an independent contractor to build a pool in my backyard and then that independent contractor brings, you know, different people, different days, five, six guys digging the hole and doing all that stuff for a few months to build the pool, would you agree that forgetting the statute, just as a matter of agency or basic employment law, I would not have any type of employment or agency relationship with the employees of that independent pool contractor I hire? Your Honor, the Louisiana Workers' Compensation statute says- I know, but we'll get to that in a second, but aside from what the statute says, I know what you think the statute is, would you agree as a general principle I would not have any agency relationship with the employees of the pool company I hire? Only through their employment with their employer. The only way the pool company can do its work is through its employees. I'm not sure if that's a yes or no, but I think it's pretty clear that I would not take a lawn company. If I hire a lawn company, its employees do not have an employment relationship with me. But anyway, go ahead and tell us why you think the statute changes that normal result. Sure, Your Honor. The plaintiffs in this case, they're one of two things. Unless you apply the logic of the district court, which is unsupported by precedent, the plaintiffs are, they're either presumptive employees or joint employees, or they're independent contractors doing manual labor. They're doing an essential part of the trade business and occupation of Rank Sugars. Under either scenario, there's no coverage under the Foreign Bureau policies. The bench trial facts focus and seem to give us fact findings we would review only for clear error on are they presumed or are they borrowed, which tell me if I'm wrong, I'm oversimplifying. It's multiple factors to say who had control, who did these workers think they worked for. If the district court made multiple factual findings about they were recruited by Lowry, they were paid by Lowry, they were housed by Lowry, they were transported by Lowry, seems hard to say we would overturn that fact determination. So my assessment of the case got me pretty quickly to the statutory issue of workman's comp and immunity. But you probably want to preserve all arguments. We certainly do, Your Honor. What would you say is your strongest argument as to district court error? We believe we went on all of the arguments. What's the best? Is it they were lent employees? Are they presumed with no rebuttal? Or is it by operation of law? It's by operation of law. There's no question. If they were not presumed to be employees of Rank Sugars, which we believe they were, then they certainly were employees of an independent contractor and they were certainly doing manual labor. But just to clear it up, the first one, whether there was a rebuttal of the presumed employee, that's a fact determination. And you articulate reasons why you think they're wrong, but we would have to come to a pretty sure conviction they were wrong. Those are facts, right? There's no confusing law there. I think it's the application of the facts as found by the judge to the law. So what case, what Louisiana case says in the presumed employee context, the multiple factors are reviewed de novo on appeal? Your Honor, I don't have an answer for that question, but I certainly could. No, that's right. And I'm not saying gotcha. I don't for sure either, but the borrowed employee, it looks to me, is the same. It would be many articulated facts, nine or ten relevant, but I would think Louisiana law on appeal would say those we give deference to the fact finder. You had a bench trial in front of this judge. And that doesn't apply to the workman's compensation scheme. Yes, Your Honor. I may be right, I may be wrong, but therefore you can see where I'm going, which is your best argument is going to be this, does 1061 apply? There's no contract here, and therefore the employees, as Judge Costa was inquiring, don't have workman's comp from the principal. Hooray. No, we've never argued that 1061 applied. That's the statutory employer statute. There's no question there wasn't a contract recognizing that these employees were employees of Harang Shook. What Louisiana case says, when 1061 would apply on its face, requiring a contract, you can just disregard 1061 and say, well, they're the equivalent of the contractor, him or herself. What's the Louisiana case that says that? Well, sure. The Louisiana case, there's actually three of them. Go ahead. Lumar is the prime case that we've relied upon. I believe it is directly on point. In Lumar v. Zapp Endeavors, Lumar was an employee of Aramark, which is a Fortune 500 company that employs hundreds of thousands of people. They do the concessions and the janitorial work at Tiger Stadium in Baton Rouge. They do it at NRG Stadium in Houston. So they hire hundreds of thousands of people. Lumar was hired to clean the Zapp's potato chip factory by Aramark. Aramark was retained by Zapp's. While cleaning the factory, Lumar injured her hand on one of the machines in the potato chip factory. She sued Zapp's and tort. Zapp's filed a motion for summary judgment, saying that her exclusive remedy was in workers' compensation. The trial court agreed. It was appealed to the Fifth Circuit. The Fifth Circuit agreed as well, and they said there's no distinction between the independent contractor who is actually signing the contract and its employees, because necessarily Aramark has to do its work through its employees. It's pretty close factually, and other cases have followed it, but there has been criticism of that, both in case law and treatises. If I'm right about that, is that why both parties are asking us to certify this question? Well, Your Honor, I don't believe there's been criticism of Lumar other than in this particular case. What do you say about Daigle from the same court, where the dissent basically said Lumar is not being followed here? Sure. When I read Daigle, I went back and looked at the appellate history of Daigle. The parties in Daigle did not even brief the issue of the manual labor exception to the independent contractor definition, and I think that Judge Winsberg hit it right on the head. He said, look, Lumar applies to these facts. He said Aramark does its work through its employees. It's liable for their acts. And the same limitations that apply to Aramark also are applicable to its employees. So if Aramark is liable, I'm sorry, if ZAF would be liable in tort for these folks, then they should be entitled to workers' compensation protection as well. He goes on to point out that the manual labor exception, it doesn't state that it's applicable only to an independent contractor who is a sole proprietor doing his own work. He says that independent contractors who are incorporated, who are juridical persons, are not limited by the definition. In the plain language of the statute. Does that work out of existence, 1061, though? No, Your Honor. 1061 deals with the employees of an independent contractor when a principal wants to contractually bring them in under their umbrella of workers' compensation. But this manual labor exception is there as a stopgap measure, a plug, where clever plaintiffs' attorneys, such as my opponents, have found an end run around the workers' compensation scheme. 1021-7, the manual labor exception, it protects the manual laborers regardless of whether they're an employee or an independent contractor. And that is essentially the reason that Louisiana has a workers' compensation statute. It's meant to be interpreted broadly. The Court shouldn't interpret 1061, 1031, or 1021-7 as being at odds. They should all work. I'm certainly not an expert, but there is logic to the thought that if you have a principal out there who hires the pool contractor and it's just that one independent contractor, it would make sense that Louisiana would say, we're going to give you workman's comp through the principal. But it is a different, albeit in tension with LUMAR or even contradiction with it, it would be different if the system is assuming the independent contractors, like a temp agency, they've got a lot of employees, we want the workman's comp to work out of them. It doesn't shift to the statutory employer. They don't get the benefit of immunity unless they write a contract with the IC that says that. So it looks like 1021 and 1061 could work in harmony, but that would be contrary to LUMAR. That's just my thinking, but here's a question for you. Don't both parties agree that on this third option, the best we should do would be certified? I thought there was agreement on that, and we're sort of testing it. We won't if it's not an open question, but didn't you say you don't object to that? I certainly don't object to it, Your Honor. We don't believe that it's necessary for you to certify it in order to come to a ruling on this case, because there's no conflict in the three circuits that have ruled on this very issue in Louisiana. However, the Louisiana Supreme Court hasn't spoken on the issue of the manual labor exception in quite some time, and it could be that the Louisiana Supreme Court could offer some guidance to us all. But I don't think it's absolutely necessary in this case. We asked for it because it's something that was available to us whenever we brought the appeal, Your Honor. And we've talked about the three cases to some extent. It's clear that Your Honors are familiar with the three cases that have ruled on the manual labor exception in Louisiana, but I would like to say that the most recent expression of the Louisiana appellate courts was handed down in October of 2018. It's an unpublished opinion. It's a Roscoe v. Filser construction, and in that court, it looked at the history and the legislative intent behind the manual labor exception, and the Fourth Circuit, which happens to be a circuit that did not comment in the other three cases we've relied upon, it said there are four factors needed to invoke the manual labor exception. The existence of an independent contractor relationship. The plaintiffs in this case argue that there's an independent contractor relationship. The performance of manual labor carrying out the contract. There's no argument that these guys were doing manual labor. The independent contractor spent a substantial portion of the work doing manual labor. There's no argument that they did 100% of their time as manual labor. And the fourth one is their work was part of the principal's trade business and occupation. No doubt planting sugarcane was an essential part of Horang's trade business. But on the first prong, your position throughout trial was adamantly that they aren't independent contractors. They're employees of Horang. Your Honor, our position is they've got to be one or the other. They've either got to be a presumptive employee or a joint employee under 1031C. Or if they're not, then they're doing manual labor as an independent contractor. But what's important about this most recent case is that it had the benefit of the case that the plaintiffs have relied upon in their interpretation of the statute. And that's the LeChute v. Deasy case. Notably, none of those four factors laid out in this most recent case requires privity of contract. Yeah. Okay, counsel. Thank you. Thank you, Your Honor. Your Honors, I'm Dan Davis. I'm counsel for the appellees, the plaintiffs, Alejandro Jorge Chavez and Alfredo Moreno Abarca. Your Honors, we win this appeal because it boils down, as you pointed out, to the application of two statutes. It's either 1061, which is the statutory employer statute, or it's the manual labor exception. Here, because there's no contractual privity, the statutory employer statute applies. I'd like to correct one thing very briefly that I think is important to the court's understanding of the issue. The Farm Bureau has, on the motion for summary judgment, again, an oral argument here, again, in their brief, has said that there's some sort of strong policy requiring the court to liberally construe the workers' compensation statutes in a way that coverage applies. They say the Louisiana Supreme Court holds that special rules apply to the interpretation of the Workers' Compensation Act provisions. That was legislatively overruled in 2012. Title 231020.1 gives us a very specific framework for statutory construction. It says, disputes concerning the facts in workers' compensation cases shall not be given a broad liberal construction in favor of either employees or employers. The laws pertaining to workers' compensation shall be construed in accordance with the rights of either the employer or the employee. So we're operating under the rules of normal statutory construction. So I'd like to turn to what Farm Bureau's, the argument they put forth most vehemently, which is the manual labor exception. As we've pointed out, you have to have contractual privity, and I'll get deeper into that in just a moment. When you don't have contractual privity with the party you're trying to seek workers' comp benefits from, your recourse is statutory employer. You're trying to get comp benefits from your direct employer's principal. That's what 1061 covers. So there are two statutes here, and in this case they're not conflicting. It's 1061 that applies and 1021 that doesn't apply. But courts, Louisiana, we're doing an eerie guess here, and courts, especially LUMAR, have said the opposite. Is that why you're telling us to certify it, or are you not telling us to certify it? Your Honor, to be very clear, we did not ask the court to certify it. The appellant asked for certification. We didn't oppose it. We feel comfortable with the Louisiana Supreme Court's ability to figure this issue out quite easily, but we also feel comfortable here. We don't think it's an issue that requires certification. So — Just get right to LUMAR. Let's get to — let's get to LUMAR, and I think that's — that is the heart of this matter. In LUMAR, in my view, you have to make three errors to get to the result that the LUMAR court reached. And first, this is just putting aside the fact that two years later in Daigle v. McGee Bacco, the same court, under the same circumstances, circumstances that reflect what we have in this case, said your sole recourse is 1061 statutory immunity. And in that case, in the absence of a written agreement reserving statutory employer status to the principal, there was no immunity for the principal vis-a-vis the W-2 or, in that case, the employee of the independent contractor. So the first error you have to make is this. You have to say, well, an independent contractor is just any juridical entity. That can be any juridical entity. But that's a little bit — that's not really understanding the purpose of the manual labor exception. 1948, the legislature amended the Workers' Comp Code, added the manual labor exception. And it's — what it is is a definition. It defines what is an independent contractor. And so we have this definition that says that it's anyone who renders service other than manual labor for a specified result, you know, for a specified price. They are  Caliguero in that Lashute v. D.C. case talks about that. He says they were supplying the definition in 1948 because then, at that time, this distinction between who's an — someone's hurt. Are they an employee or are they an independent contractor? That distinction was becoming difficult to make. So the court defined independent contractor in a way that sets an independent contractor against an employee.  All right? It can be — we use that word independent contractor to talk about — to refer to juridical entities in major corporations like Aramark in the Lumar case. But Caliguero also pointed this out. He says at the end of the manual labor exception, it says — when it accepts the manual labor, it says the provisions of this chapter shall expressly provide — apply to him. Caliguero says apply to him means he can get workers' compensation benefits. Juridical entity like Lowry Farms in this case or Aramark can't get workers' compensation benefits. The definition is there to help us distinguish between who is an employee and who is an independent contractor. So that's the first step you have to make to get to the decision in Lumar. Lumar didn't make that step. Exactly. That's wrong. That's right, and that's wrong. The second — What significance in the Erie Guest do we need to give Lumar given — I'm probably mispronouncing it, but the civil code's jurisprudence constante — I mean, basically the fact that the civil code doesn't put as much weight on precedent as another state. I'd say very little. I think that on top of the statutory framework that is clear and that this court exercises — this court exercises that framework in connection with people who get hurt, and this court has to decide whether the contract is reserving statutory employer status for the principal. So in addition to the statutory framework, you know, Lumar is an appellate decision that was overturned two years later by the same court. You also have dicta, very good dicta, from the Supreme Court, including Calagaro's dissent in Lushuti v. Deasy, in which that — and that — the issue in that case is not at issue here. And you have the Kirkwood case as well. You have — I would say you give little weight at all to that. But I would like to say that the second, and I think maybe the most important, lapse in reasoning the court makes in Lumar is they say this, we see no reason to distinguish between the independent contractor and the employee of the independent contractor. Now, there's a lot of reasons why you would distinguish between the independent contractor and the employee of the independent contractor. Now, one of them is, how do you apply the rule? If any juridical entity — now, here we have this — in this case, you have the way that Farm Bureau would like to apply it. You have two manual laborers working for an independent contractor, a company that is supplying manual labor to a principal. And they say, well, since you've got a juridical employee, it's an independent contractor by virtue of being a company. It's supplying manual labor. It's, therefore, when one of its W-2 employees, to whom it has a comp obligation under the code, they're employees. They are covered. And they got coverage here? Yes, they have coverage. They were supplied coverage and are today receiving benefits from the comp insurer of Lowry Farms. So what would have happened — and it's in the record — I'm not great in this area of law. That means they got coverage and that would also give immunity to Lowry. Is that fair? Yes. Okay. So now they're suing instead the principal? Correct. Correct. So they were injured by an action of one of the employees of Horang Sugars. So if we're not going to distinguish between the independent contractor and the employee of the independent contractor, let me change the facts just a little bit. I wonder how Farm Bureau would apply it in this situation. What would have happened if — and this is in the record — Lowry supplied a whole hierarchy of supervisors, people who didn't perform manual labor, who went from farm to farm supervising the workers. But they were in the field. What if one of them had been injured? What if one of them had been hit by the tractor in this case? Since we don't distinguish between the independent contractor supplying manual labor and the employee of the independent contractor, how would this LUMAR test even apply? Would they be covered vis-a-vis Horang Sugars? By that logic, I think they would be. I think, in fact, arguably the administrative personnel up in Arkansas, they are the employees of a company, an independent contractor supplying manual labor. So the administrative payroll folks up in Arkansas, if they get hurt there, they also have comp rights against Horang Sugars down in Louisiana, who they've never seen before. Because their employer is an independent contractor supplying manual labor, and there's no reason to distinguish between the contractor and the employee. So that rule falls apart. The third thing that the court ignores is the — and this is the elephant in the room. It's the existence of 1061. It's the existence of a framework that gives us statutory employer status in Louisiana. You can't have — not LUMAR or any of the cases cited by Farm Bureau. In none of those cases does any court give any time or any analysis of how this would work because, I'll tell you, this would be a massive judicial expansion of comp immunity in the state of Louisiana, if now that — now all you have to do, instead of going through borrowed-servant analysis, instead of looking at 1061 to see if the employer, the principal, had reserved that status of statutory employer with his contractor vis-a-vis those employees, you would say, stop, they were manual laborers. They're manual laborers. End of inquiry. We don't need — The substantial body of law in 1061 never even talks about 1021. That's correct. Absolutely correct. There are cases in front of this very court where the same thing happens. The question just is — the question before the court is simply, did the principal put in writing with the contractor language that sufficiently reserved independent contractor — I mean, statutory employer status to himself? So they can negotiate for protection against tort liability, but in doing so, they assume the workman's comp. That's correct. Here, they didn't negotiate for that. Workman comp stays with Lowry, but you're saying, therefore, they can't get the benefit. That's correct. There is a contract between Harangue Sugars and Lowry Farms, and it does not reserve statutory employer status for Harangue Sugars vis-a-vis the W-2 employees of Lowry Farms. So that is the state of the law. One thing in LeChute v. Deasy that I think is worth pointing out is the judge refers to Sam v. DeVille Gin, and in that case, at page 842, it says — the Third Circuit said — an independent contractor performing manual labor brings his suit under the provisions of 23-1021-6. That was — the manual labor exception was subsection 6 previously. And not under the provisions of 23-1061, which is concerned only with the employees of independent contractors. So the court there — and there are cases in nearly every circuit that use similar language to that. When 1061 — 1061 applies when there's no contractual privity between an injured worker and the principal of that worker's employer. When — and by the way, the 1997 amendment to 1061 severely restricted — that's when the legislature gave the option to Harangue Sugars or any principal to say, I want to have — I want to reserve statutory employer status to myself, and I have to do it in a written agreement. That's the 1997 amendment. Previous to the 1997 amendment, the plaintiffs in this case would have been covered vis-a-vis Harangue Sugars, because then all they would have had to show is that their direct employer and they were working in the trade, business, and occupation of the principal. Am I right that almost the whole bench trial was on a totally separate point than the one we've been arguing today? That's it. Your — The bench trial was all about who controls these people. Well, those are the facts. That is the only fact-centric analysis there. We had to put in all of the facts that would pertain to control, selection, and all the things that would weigh in on whether someone — Those facts were viewed by us for clear error? Clear error, sir. So, in closing, to apply the manual labor exception the way Farm Bureau proposes would abrogate 1061, would render it meaningless, and have it — and I believe that Farm Bureau would acknowledge and has acknowledged in an oral argument to the trial court that 1061, statutory employment status, would then apply only to non-manual laborers in most circumstances. Thank you. Your Honor, you asked about the eerie gas factors during counsel's argument. I'd like to point out that Lashute v. D.C. does not talk about privity of contract at all. There's not a — the word privity does not appear in that case. And dicta, it doesn't — I mean, anyway. And moreover, that statute was based — I mean, that case was based on a previous statute which was heavily briefed by the plaintiffs and also relied upon in the district court when they relied upon Lashute, where in the end it says, when the independent contractor is carrying out the work of his contract. Well, the current version of that statute, which is current as of 2013, now says while he was carrying out the contract. Now, I didn't put a lot of stock into the word his, the pronoun, but the district court and the plaintiffs did in making their argument. And I just wanted to point out to the court that that's not how the statute reads now. It's not how the statute read at the time of this accident. An independent contractor — I mean, the word contractor, you would normally have a contract. People have implied contracts. If you're talking about a written contract, in Louisiana it's quite common for people to have implied contracts. And also, going back to — What are the terms of the contract that they had? Well, it goes back to the civil code. I mean, you're agreeing to — No, what were the terms? What was the — I mean, none of that was addressed at the principal. The terms of the contract in this case are — Right. The terms of — You're saying that they were implied contractors. Correct. There had to be some terms. Sure. They provided labor. They charged a per-acre price. But I would like to point out that that price passed through to the farmer. So the house that they were living in belonged to the farmer. He paid — the law reforms testified that all of the costs of getting the visas, of having them travel to Donaldsonville, Louisiana, of renting the house that was owned by Harang, all were put into the per-acre price. So essentially, the farmer is paying, but it's just a pass-through for the per-acre rate. So that's the terms. They provide them with the labor, and it's the number of laborers that the farmer asked for. But as far as the Erie Guess goes, there are no Louisiana Supreme Court cases on this issue. I thought then we said — I was on a case that issued just a few weeks ago that said under the civil system — and this is true in common law, too — but especially under the civil system, the language of the statute is of primary importance. So our panel, we — there were some intermediate appellate decisions going the other way, and it was written by Jack Wehner, who knows Louisiana law well, and it said the statute trumps intermediate court decisions in the civil system. And even if it does, Your Honor, we believe the statute's clear on its face as well. And, you know, the fourth factor down on the Erie Guess is the lower state court decisions, and that's the one we fall to in this case. And we have three decisions that interpret the manual labor statute, the manual labor exception. And the second and third just cite Lumar as controlling? They did, but they go through the analysis, certainly. Now, I want to address 1031. It's not something that we were able to get to in the opening, but I think it's important that the Louisiana Supreme Court in Humphreys v. Marquette, they basically said, look, after years of dealing with these unwieldy factors that produced delays in compensation to plaintiffs such as these and inconsistent results, both the general and the special employer are liable in solido for workers' compensation benefits. So the case law led to a codification of the in solido liability. They say, look, it doesn't matter if the general employer or the special employer is on the hook for the comp. Somebody needs to pay the workers, and y'all work it out later. And that's what needs to happen in this case. There's also the case of Morgan v. ABC Manufacturing. It's a Louisiana Supreme Court case that says where the general employer, such as Lowry, is in the business of supplying laborers, because that's what Lowry is under the H-2A regulations. They are a labor contractor. That little red light. I think we got your point. You've already extended it. Thank you. Thank you, Your Honor. That's the end of the cases for today. So.